[No. B231520. Second Dist., Div. Three. Aug. 24, 2011.]

BANK OF AMERICA CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PAUL RONALD et al., Real Parties in Interest.

COUNSEL

Bryan Cave, Douglas E. Winter, Robert E. Boone III, Keith D. Klein and John M. Thomas for Petitioners.

No appearance for Respondent.

Mitchell J. Stein; Erikson M. Davis; Kenin M. Spivak, Theodore Maloney; and Michael S. Riley for Real Parties in Interest.

OPINION

**KLEIN, P. J.**—Defendants and petitioners Bank of America Corporation, Countrywide Financial Corporation, Countrywide Home Loans, Inc., Recontrust Company, N.A., and CTC Real Estate Services (collectively, Countrywide or defendants)[1] seek a writ of mandate directing respondent superior court to vacate its order overruling Countrywide's demurrer to the first cause of action of the operative third amended complaint (TAC), and to enter a new and different order sustaining the demurrer to said cause of action without leave to amend.

Plaintiffs and real parties in interest Paul Ronald, Lisa Ronald and 246 others (collectively, plaintiffs) allege they are borrowers who obtained Countrywide-originated residential mortgage loans. In this litigation, which is currently pending in the trial court, plaintiffs are prosecuting a variety of claims against Countrywide. This writ petition relates solely to plaintiffs' cause of action for fraudulent concealment, which is the first cause of action of the TAC. The trial court overruled Countrywide's demurrer to said cause

---

[1] In 2008, Bank of America Corporation purchased Countrywide Financial Corporation and its affiliates.

of action and certified its ruling for writ review pursuant to Code of Civil Procedure section 166.1 (section 166.1). Countrywide filed the instant petition for writ of mandate and we issued an order to show cause.

We grant Countrywide's petition. We conclude the plaintiffs/borrowers cannot state a cause of action against Countrywide for fraudulent concealment of an alleged scheme to bilk investors by selling them pooled mortgages at inflated values, the demise of which scheme led to devastated home values across California. Due to the generalized decline in home values which affects all homeowners (borrowers of Countrywide, borrowers who dealt with other lenders, and homeowners who owned their homes free and clear), there is no nexus between Countrywide's alleged fraudulent concealment of its scheme to bilk investors and the diminution in value of the instant borrowers' properties.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings.*

Plaintiffs filed this action on March 12, 2009. The operative TAC, filed July 7, 2010, alleged in pertinent part:

By 2005, Countrywide was the largest mortgage lender in the United States, originating over $490 billion in loans in that year alone. Countrywide's founder and CEO, Angelo Mozilo determined that Countrywide could not sustain its business "unless it used its size and large market share in California to systematically create false and inflated property appraisals throughout California. Countrywide then used these false property valuations to induce Plaintiffs and other borrowers into ever-larger loans on increasingly risky terms." Mozilo knew "these loans were unsustainable for Countrywide and the borrowers and to a certainty would result in a crash that would destroy the equity invested by Plaintiffs and other Countrywide borrowers."

Mozilo and others at Countrywide "hatched a plan to 'pool' the foregoing mortgages and sell the pools for inflated value. Rapidly, these two intertwined schemes grew into a brazen plan to disregard underwriting standards and fraudulently inflate property values . . . in order to take business from legitimate mortgage providers, and moved on to massive securities fraud hand-in-hand with concealment from, and deception of, Plaintiffs and other mortgagees on an unprecedented scale."

Countrywide had a duty to "disclose to each borrower, including each Plaintiff herein, that the mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that Countrywide knew would result in the loss of the equity invested by Plaintiff in his home and in severe impairment to Plaintiff's credit rating." Countrywide's fraudulent scheme *"destroyed California home values county-by-county and then State-wide."* (Italics added.)

At the time Countrywide "induced Plaintiffs to enter into mortgages, [it] knew [the] scheme would lead to a liquidity crisis and grave damage to each Plaintiff's property value and thereby result in each Plaintiff's loss of the equity such Plaintiff invested in his house." The *"unraveling of the Defendants' fraudulent scheme has materially depressed the price of real estate throughout California,* including the real estate owned by Plaintiffs, resulting in the losses to Plaintiffs." (Italics added.)

The first cause of action for fraudulent concealment, which is the focus of this writ petition, incorporated by reference the above allegations and further pled:

Countrywide "was aware, but . . . failed to disclose, that [its] business model was unsustainable." Despite Countrywide's awareness of the risks it was undertaking, "Countrywide hid these risks from the borrowers, potential borrowers and investors." This concealment "was essential to [Countrywide's] overall plan to bilk investors, trade on inside information and otherwise pump [up] the value of Countrywide stock."

*"As a proximate result of the foregoing concealment by Defendants, California property values have precipitously declined and continue to decline,* gravely damaging Plaintiffs by materially reducing the value of their primary residences, depriving them of access to equity lines, second mortgages and other financings previously available based upon ownership of a primary residence in California, in numerous instances leading to payments in excess of the value of their properties . . . ."[2]

---

[2] In addition to the first cause of action, fraudulent concealment, the TAC set forth the following claims: intentional misrepresentation (2d cause of action); negligent misrepresentation (3d cause of action); invasion of constitutional right to privacy (Cal. Const., art. I, § 1) (4th cause of action); violation of the California Financial Information Privacy Act (Fin. Code, § 4050 et seq.) (5th cause of action); violation of Civil Code section 2923.5 (procedures that must be followed before holder of mortgage may issue notice of default) (6th cause of action); violation of Civil Code section 1798.82 (requiring disclosure to consumer of data security breach) (7th cause of action); and unfair competition (Bus. & Prof. Code, § 17200 et seq.) (8th cause of action).

### 2. *Countrywide's demurrer.*

Countrywide demurred to the TAC in its entirety. With respect to the cause of action for fraudulent concealment, Countrywide argued, inter alia, "appraisals and underwriting guidelines are tools that a lender uses to qualify borrowers for loans and exist only for the lender's protection. Therefore, the borrowers in this case could not have justifiably relied on any alleged omissions or misrepresentations regarding the Bank's appraisals and underwriting standards in deciding whether they could afford their loans. Instead, the borrowers were required to evaluate the terms of their loan in their loan disclosures—which they do not claim were inaccurate—and 'rely on their own judgment and risk assessment in deciding whether to accept the loan.' "

Further, the "borrowers' allegations regarding securitization also cannot support their fraudulent [loan] origination causes of action. . . . [The borrowers] contend that although the Bank may have disclosed the potential sale of the mortgages, it did not disclose an intent to sell 'virtually all mortgages at highly-inflated and unsustainable values.' . . . The mere fact that the Bank disclosed that it had the right to sell the mortgages is sufficient and there is no need for the Bank to engage in a lengthy discussion about the different permutations regarding how it may exercise that right. . . . Moreover, the price at which the borrowers' loans may have been securitized has no bearing on the borrowers' payment under their mortgages—to which they voluntar[il]y assented."

### 3. *Hearing and ruling on demurrer.*

On January 11, 2011, the matter came on for hearing. At the outset, the trial court indicated, "the issues presented by the many plaintiffs in this case as against their current mortgage lender and/or loan servicer *are part of a larger socioeconomic problem* that confront[s] our society in California and all of the other states in this union, an issue of great concern to the U.S. Congress, state Legislature, and the bank regulators, given that in our banking system the banks are insured by the full faith and credit of the United States government for all intents and purposes, so the continued solvency of the banking industry as a whole is a matter of intense interest to the U.S. Congress as well as the central bank." (Italics added.)[3]

---

[3] We are advised that 19 nearly identical cases have been filed in the superior court in Los Angeles and Orange Counties since December 2010.

With respect to the first cause of action for fraudulent concealment, the trial court indicated it was inclined to overrule the demurrer. "The first cause of action, . . . notwithstanding its great ambition and the multitude of plaintiffs actually survives the demurrer, because on the question of reliance, this is a fraudulent concealment claim, and the generalized allegations applicable to each and every plaintiff . . . *is that they never heard [anyone] telling them how wrong and inaccurate real estate pricing had become as a result of the defendants' conduct*, which was advanced by the alleged fraudulent concealment. And so, I don't believe there's anything further on which particularity is actually required . . . ." (Italics added.)

The trial court observed, "in many ways the plaintiffs are hoping to at least theoretically create the possibility of astronomic exposure on the appearing defendants, including the federally insured bank, Bank of America, that the question of whether or not *Perlas*[4] should apply, as argued by the defendants, presents a very important question, which should be if possible addressed by our own Court of Appeal through a writ proceeding, certified by myself pursuant to section 166.1, as soon as a ruling on today's demurrer is finalized."

With respect to the fraudulent concealment claim, Countrywide's counsel made two points: except for express statutory provisions, Countrywide did not owe a duty of disclosure to the borrowers; and there was a failure by plaintiffs to allege the nondisclosure was the cause of their damages.

The trial court observed, "the absence of a duty is another way of saying immunity. But I sort of went back two paces to the more fundamental common law principle that one can't engage in intentional fraud through concealment with somebody with whom one is doing business." Going back "to sort of first principles on Prosser on Torts or Witkin on Torts, which is as you enter into a commercial relationship you can't engage in this intentional tort. And whether it is a fraudulent misrepresentation, or a fraudulent concealment, . . . once you have a business relationship, . . . *if Mozilo and his troops are intentionally inflating the value of all or much of American real estate*, in order to generate more loans, in order to generate short-term profits and bonuses, and they know they are doing it, but choose not to tell their customers . . . that they are being sucked into this maw; . . . at least under my first theory of first principles [of tort] . . . that duty might be recognized. [¶] But you may be right, that cases like *Perlas* . . . actually adopt a jurisprudential view that banks should be functionally immunized in this aspect of the

---

[4] *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429 [113 Cal.Rptr.3d 790] (*Perlas*).

relation with customers. And if that is the view of the Court of Appeal or I have got it wrong, it would be better to know the answer to that early, because [of the] high stakes claim in this case . . . ." (Italics added.)

Moving beyond duty to the element of causation, Countrywide's counsel argued, "we've all suffered a loss in value on our homes." Irrespective of whether a homeowner obtained a loan from Countrywide, or had no relationship with Countrywide, all homeowners had suffered a loss in equity with the collapse of the housing bubble. Therefore, plaintiffs were incapable of alleging that Countrywide's nondisclosure of its purported scheme "is the cause of their loss in property."

After hearing additional arguments by counsel, the trial court issued an order overruling the demurrer to the first cause of action for fraudulent concealment.[5]

### 4. *Writ proceedings.*

On February 3, 2011, the trial court issued an order "certif[ying] its ruling on Defendants' Demurrer to the First Cause of Action for Fraudulent Concealment for writ review pursuant to section 166.1."[6]

On March 11, 2011, Countrywide filed the instant petition for writ of mandate, seeking to set aside the overruling of its demurrer to the first cause of action for fraudulent concealment.

---

[5] In addition to overruling the demurrer to the first cause of action of the TAC, the January 11, 2011 order by the trial court sets forth the following rulings with respect to the balance of the complaint. As to the second and third causes of action, intentional and negligent misrepresentation, the trial court sustained demurrers *with* leave to amend, to enable plaintiffs to allege fraud with greater particularity. The demurrer to the fourth cause of action was overruled. The demurrer to the fifth cause of action was sustained without leave to amend. The demurrer to the sixth cause of action was sustained without leave to amend as to six of the plaintiffs and otherwise was overruled. Finally, demurrers to the seventh and eighth causes of action were overruled.

[6] Section 166.1 states in pertinent part: "Upon the written request of any party or his or her counsel, or at the judge's discretion, a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation."

In enacting section 166.1, the Legislature's intent was to "codify a judge's implicit authority to comment on an order." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2865 (2001–2002 Reg. Sess.) as amended Aug. 14, 2002, p. 2.) "By focusing the attention of the appellate court on the point of law in dispute, the trial judge may encourage the appellate court to hear and decide the question, assisting the parties and the trial court to a resolution of the entire matter." (*Ibid.*) Section 166.1 "does not change existing writ procedures or create a new level of appellate review." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2865, *supra*, as amended Aug. 14, 2002, p. 2.)

This court issued an order to show cause, placing the matter on calendar.

## CONTENTIONS

Countrywide contends the trial court erred in overruling the demurrer to the fraudulent concealment claim because (1) Countrywide did not owe a duty to disclose to plaintiffs/borrowers its alleged intent to defraud third party investors by selling mortgages to those investors at fraudulently inflated prices; (2) plaintiffs failed to plead any cause-in-fact nexus between Countrywide's concealment of its alleged scheme from plaintiffs and the harm which plaintiffs suffered; and (3) public policy limits proximate cause.

## DISCUSSION

### 1. *Standard of review.*

"Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885 [66 Cal.Rptr.2d 888, 941 P.2d 1157].)

### 2. *The tort of fraudulent concealment.*

■ "[T]he elements of a cause of action for fraud based on concealment are: ' "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. [Citation.]" [Citation.]' [Citation.]" (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850 [100 Cal.Rptr.3d 637] (*Kaldenbach*); accord, *Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1126–1127 [117 Cal.Rptr.3d 262].)

■ There are " 'four circumstances in which nondisclosure or conceal-ment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff;[7] (2) when the defendant had exclusive

---

[7] Absent special circumstances, a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. (*Oaks Management Corporation v. Superior*

knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]' [Citation.]" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 [60 Cal.Rptr.2d 539] (*LiMandri*).)

### 3. *Duty.*

The gravamen of the fraudulent concealment claim is that the defendants failed to disclose to plaintiffs/borrowers that defendants "knowingly pooled their secretly risky loans into pools they sold above fair value, defrauding their investors." The *"unraveling of the Defendants' fraudulent scheme has materially depressed the price of real estate throughout California*, including the real estate owned by Plaintiffs." (Italics added.)

On the fraudulent concealment claim, we begin with the threshold question of duty. (*Kaldenbach, supra*, 178 Cal.App.4th at p. 850.) We address whether Countrywide owed a duty to disclose to the plaintiffs/borrowers its alleged fraudulent scheme to create inflated property appraisals throughout California, and then pool its mortgages and sell the pools to unsuspecting investors at inflated prices.

*Perlas*, on which the trial court focused in its determination of duty, is not on point. In *Perlas*, the borrowers alleged "they could rely upon [the mortgage lender's] knowingly false determination that they *qualified* for the loans as a determination by [the lender] that they could *afford* the loans." (*Perlas, supra*, 187 Cal.App.4th at p. 431.) *Perlas* held the plaintiffs failed to state a cause of action against the lender for fraudulent misrepresentation or fraudulent concealment. *Perlas* reasoned the lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's, and borrowers rely on their own judgment and risk assessment in deciding whether to accept a loan. (*Id.* at p. 436.)

In the instant case, plaintiffs emphasize that "[t]his lawsuit is not about unaffordable loans," and that they did not allege Countrywide "should decide for its borrowers whether they could afford the loans being issued." Thus, plaintiffs eschew any claim they relied on Countrywide to determine whether they could afford the loans. Consequently, *Perlas*'s holding that a lender does

---

*Court* (2006) 145 Cal.App.4th 453, 466 [51 Cal.Rptr.3d 561]; *Perlas, supra*, 187 Cal.App.4th at p. 436.) Plaintiffs do not contend Countrywide owed them a fiduciary duty.

not owe a duty to a borrower when it decides a borrower can afford a loan, has no bearing on the duty question in this case.[8]

Rather, *LiMandri, supra,* 52 Cal.App.4th 326, is instructive. There, attorney LiMandri filed suit against Judkins, counsel for a lender (Security) that made a loan to LiMandri's clients, asserting that Judkins, with knowledge of LiMandri's superior lien rights to his client's settlement proceeds in underlying litigation, created a security interest in those proceeds on behalf of Security and asserted it as superior to LiMandri's contractual lien. (*Id.* at p. 341.)

The *LiMandri* court held the trial court properly dismissed LiMandri's claim for fraudulent nondisclosure "on the ground Judkins owed LiMandri no duty to disclose his intention to assert the superiority of Security's lien." (*LiMandri, supra,* 52 Cal.App.4th at p. 338.) *LiMandri* explained the "nondisclosure causes of action are further problematic in that they essentially seek to hold Judkins liable for failing to disclose his intention to wrongfully assert the superiority of Security's lien rights. Since Judkins's wrongful assertion of superior lien rights on behalf of Security is the basis for LiMandri's cause of action for intentional interference with prospective economic advantage, LiMandri's theory, in essence, is that Judkins owed him a duty to disclose his intention to commit an intentional tort. Although 'inferentially, everyone has a duty to refrain from committing intentionally tortious conduct against another' [citation], it does not follow that one who intends to commit a tort owes a duty to disclose that intention to his or her intended victim. The general duty is not to warn of the intent to commit wrongful acts, but to refrain from committing them. *We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort.*" (*Id.* at p. 338, italics added; accord, *Deteresa v. American Broadcasting Companies, Inc.* (9th Cir. 1997) 121 F.3d 460, 467–468 [even if audiotaping and videotaping were wrongful, defendant was not liable for failing to disclose its intention to commit those wrongful acts]; *In re MRU Holdings Securities Litigation* (S.D.N.Y. 2011) 769 F.Supp.2d 500, 515 [it is " 'rather circular' to say that . . . Defendants 'committed fraud by concealing their intent to commit fraud' "].)

Guided by the above, we conclude that while Countrywide had a duty to refrain from committing fraud, it had no independent duty to disclose to its

---

[8] Because plaintiffs herein do not contend they relied upon Countrywide's determination that plaintiffs could afford the loans for which they had been approved, we express no opinion as to *Perlas*'s resolution of the duty question presented in that case.

borrowers its alleged intent to defraud its investors by selling them mortgage pools at inflated values.

### 4. *Causation.*

■   Turning from duty to the element of causation, the inquiry is whether, " ' "as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage." ' " (*Kaldenbach, supra,* 178 Cal.App.4th at p. 850.)

Paragraph 339 of the TAC alleges: *"As a proximate result of the foregoing concealment by Defendants, California property values have precipitously declined and continue to decline, gravely damaging Plaintiffs* by materially reducing the value of their primary residences, depriving them of access to equity lines, second mortgages and other financings previously available based upon ownership of a primary residence in California, in numerous instances leading to payments in excess of the value of the their properties, thereby resulting in payments with no consideration and often subjecting them to reduced credit scores (increasing credit card and other borrowing costs) and reduced credit availability." (Italics added.)

The defect in this allegation is that homeowners who did not obtain loans from Countrywide likewise suffered a decline in property values, a decline in their home equity, and reduced access to their home equity lines of credit. Irrespective of whether a homeowner obtained a loan from Countrywide, or obtained a loan through another lender, or whether a homeowner owned his or her home free and clear, all suffered a loss of home equity due to the generalized decline in home values. That being the case, there is no nexus between the alleged fraudulent concealment by Countrywide and the economic harm which these plaintiffs/borrowers have suffered.

■   We emphasize the limited nature of our holding. We merely conclude plaintiffs failed to state a cause of action against Countrywide for fraudulent concealment of its alleged scheme to "bilk investors by selling collateralized mortgage pools at an inflated value," the demise of which led to a generalized decline in California residential property values.

### DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order overruling the demurrer to the first cause of action of

the third amended complaint and to enter a new and different order sustaining the demurrer to said cause of action without leave to amend. The parties shall bear their respective costs in this proceeding. (Cal. Rules of Court, rule 8.936(b)(1).)

Croskey, J., and Kitching, J., concurred.

A petition for a rehearing was denied September 12, 2011, and the petition of real parties in interest for review by the Supreme Court was denied November 30, 2011, S196570. Chin, J., did not participate therein.