Filed 8/6/13  Sedewick v. Bank of America CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN SEDGWICK et al., | |
| Plaintiffs and Appellants, | G047001 |
| v. | (Super. Ct. No. 30-2011-00503519) |
| BANK OF AMERICA CORPORATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Gordon C. Strange for Plaintiffs and Appellants.

McGuire Woods and Leslie M. Werlin for Defendants and Respondents.

\*          \*          \*

Plaintiffs Stephen and Robin Sedgwick appeal from a judgment in favor of defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Mortgage Electronic Registration Systems, Inc., and MERSCORP Holdings, Inc. (collectively defendants). Judgment was entered after the court sustained defendants' demurrer to the fraudulent concealment cause of action in the second amended complaint (SAC) without leave to amend. In sustaining defendants' demurrer to the causes of action in the first amended complaint for which it allowed leave to amend, the court limited the length of the SAC to 15 pages.

Plaintiffs argue the court abused its discretion in sustaining the demurrer to the SAC and in imposing the page limitation. They also maintain the court erred in ruling the fraudulent concealment cause of action was barred by the statute of limitations because defendants' conduct tolled its accrual. They further assert Stephen's failure to disclose potential claims against defendants on his Chapter 7 bankruptcy petition does not estop him from proceeding on the complaint. Finally, they contend they should have been given leave to amend.

We conclude there is no basis to reverse based on the page limitation, nor did the court err in sustaining the demurrer to the fraudulent concealment cause of action without leave to amend. Because we decide the case on these grounds we have no need to and do not address any of the other issues raised.

RULES OF COURT VIOLATIONS

As a preliminary matter we must note plaintiffs' numerous violations of the California Rules of Court. First, rule 8.204(a)(1)(A) requires a brief to include a table of authorities listing cases, statutes, and other authorities. Although plaintiffs provide a list, they fail to include page numbers where the authorities are discussed, making the list essentially worthless.

Likewise, in setting out their 30-page statement of facts, with a few exceptions plaintiffs failed to provide record references, in violation of California Rules of Court, rule 8.204(a)(1)(C) that requires a brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." We will generally disregard facts and arguments not supported by adequate citations to the record. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.) Moreover, we do not consider any claims not included under a separate heading or subheading summarizing the argument. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Evans v. CenterStone* (2005) 134 Cal.App.4th 151, 160.)

FACTS AND PROCEDURAL HISTORY

According to the respondents' brief, in a 93-page complaint plaintiffs sued defendants, among others, for fraudulent concealment, intentional and negligent misrepresentation, invasion of privacy, violation of the California Financial Information Privacy Act (Fin. Code, § 4050 et seq.) and Civil Code section 1798.82, unfair competition, rescission based on fraud, and "conspiracy," seeking damages, restitution, and injunctive relief. Subsequently plaintiffs filed a 110-page first amended complaint (FAC), adding other parties as defendants and eliminating the causes of action for statutory violations and unfair competition.

Defendants' demurrer to the FAC was sustained with leave to amend as to the fraudulent concealment, intentional and negligent misrepresentation, and rescission causes of action and without leave to amend as to the invasion of privacy, conspiracy, and injunctive relief claims. In the tentative ruling the court put a limit on the second amended complaint of 12 pages, noting the FAC contained "rhetoric" and "hyperbole[]" and pointing out "[h]yperbole is never important. It's superfluous." Plaintiffs' counsel asked for "at least . . . 30 pages," noting he could not replead in 12. He also stated he

3

would not eliminate all the rhetoric and hyperbole, although he would "try to truncate it," claiming it was important as part of the fraud claim. He explained he needed additional pages to allege three causes of action, fraudulent concealment and intentional and negligent misrepresentation, in the SAC. The court allowed him 15 pages.

The SAC ultimately contained two causes of action, one for fraudulent concealment against defendants. The second cause of action, for breach of fiduciary duty, was against Bayside First Mortgage, Inc., a brokerage company on which plaintiffs allegedly have relied for 10 years to recommend real estate purchases and loan refinances.

In the fraudulent concealment count, plaintiffs plead that despite Stephen's purchase of four pieces of real estate and multiple refinances, and his 25 successful years in business, he "is not a sophisticated real estate investor or business person" (boldface, capitalization, and underscoring omitted) because his education stopped after high school. He claims he has always relied on lenders and brokers, in this case Bayside, who "matched" him with Countrywide for the past 10 years. He alleges his limited education and reliance on this "matching" created a "'special relationship'" that required Countrywide to disclose everything about its underwriting and business practices that plaintiffs might think material.

Plaintiffs allege that in 2004 they purchased their residence in Coto de Caza for $3.2 million with a $2 million loan from Washington Mutual. In 2005 Bayside "steer[ed]" them into a refinance of this loan with Countrywide and urged plaintiffs to agree to a jumbo loan despite the fact it was "clear[]" plaintiffs did not qualify based on their $170,000 annual income.

In 2006, in spite of plaintiffs' limited income, Bayside encouraged plaintiffs to enter into three additional jumbo, negative adjustable rate mortgage loans with Countrywide, refinancing two investment properties in Hawaii and the Coto de Caza residence, for which plaintiffs were not qualified. Plaintiffs are in default on one of the

4

Hawaii properties and the Coto de Caza residence for the loans "they never wanted, nor qualified for, [having] concerns from the very beginning of the loan process that they did NOT have the financial resources sufficient to qualify and successfully maintain payments" on those notes. Allegedly defendants also refused to modify the two loans. Plaintiffs plead they were damaged by the loss of down payments and equity in those two properties plus a decline in their credit rating.

The court sustained defendants' demurrer without leave to amend and entered judgment against plaintiffs.

DISCUSSION

*1. Standard of Review*

An order sustaining a demurrer without leave to amend is reviewed de novo. (*Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 178.) "'[W]e treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law [citations]'" (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 43) or speculative allegations (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 318).

*2. Demurrer to First Amended Complaint*

In one of their main headings plaintiffs state the court abused its discretion in sustaining the demurrer to the FAC. In the discussion they fail to specify whether they are referring to the causes of action where the demurrer was sustained without leave to amend or with leave to amend or both. In fact, they do not challenge the ruling as to the substance of any of the causes of action. The only claim made as to the first amended complaint concerns the page limit for the second amended complaint. As such, any

5

contention plaintiffs may have as to the sustaining of the demurrer to any cause of action in the first amended complaint is forfeited for failure to make reasoned legal argument. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

*3. Page Limit*

Plaintiffs assert the court abused its discretion in fixing a 15-page limit for the SAC. They requested 30 pages at the hearing on the demurrer but in their brief they asked that there be no limit, or what they deem "reasonable," 60 pages.

Even assuming the page limit was an abuse of discretion, plaintiffs were not prejudiced. The effect of the limitation was to sustain the demurrer without leave to amend as to the intentional and negligent misrepresentation and rescission causes of action. To challenge a demurrer sustained without leave to amend, a plaintiff has the burden to show how the complaint could have been amended to state a legitimate cause of action. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

In plaintiffs' discussion of why the court abused its discretion by limiting the brief to 15 pages, they focus solely on their inability to include the "detailed discussions, examination and analysis of the historical framework and the genesis and evolution of the financial collapse of 2007" as a basis for pleading why defendants' "actions [were] illegal and fraudulent." (Boldface omitted.) Plaintiffs say nothing about what additional facts they would have alleged in the fraudulent concealment or omitted causes of action. These omissions forfeit any claim of error as to the page limit.

*4. Fraudulent Concealment Cause of Action*

Plaintiffs contend the fraudulent concealment claim was well pleaded based on defendants' alleged duty to disclose the following facts: 1) the appraisals of the properties were inflated; 2) defendants violated their own underwriting guidelines; 3) defendants intended to sell plaintiffs' mortgages in excess of their actual value, thereby

6

defrauding investors; 4) defendants knew that as a result of the first three acts, the housing market would be "destroy[ed]," eliminating plaintiffs' ability to sell or refinance two of their properties and "destroying [p]laintiffs' equity"; and 5) defendants "bet[]" on plaintiffs' defaults by entering into credit-default swaps that would garner defendants hundreds of millions of dollars. In addition, plaintiffs allege defendants concealed general lending information, including use of mortgage pools as collateral, their high percentage of sub-prime loans, their definition of "'prime' loans'" was below industry standards, and their practice of "'steering' borrowers into [their] loans when other less expensive alternatives were available."

An essential element of a fraudulent concealment cause of action is the defendant's duty to disclose a material fact. (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.) In *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429 the plaintiff borrowers sued a mortgage lender after a foreclosure sale, alleging, among other things, fraudulent misrepresentation. The plaintiffs had refinanced their home loan with the defendant, receiving a line of credit as part of the refinance. But their income was insufficient for them to make the payments. The complaint alleged that when the defendant approved the loan, it knew or should have known of the plaintiffs' inability to service the loan and fraudulently concealed that fact from them. After the defendant demurred to the complaint, the plaintiffs maintained they could amend to allege, among other things, that the defendant's approval of the loan was a misrepresentation the defendant believed the plaintiffs could afford the payments.

On appeal, the court disagreed and further confirmed that "'[a]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender.' [Citations.] [Citation.] A commercial lender pursues its own economic interest in lending money. [Citation.]" (*Perlas v. GMAC Mortgage, LLC*, *supra*, 187 Cal.App.4th at p. 436.)

7

In *Bank of America v. Superior Court* (2010) 198 Cal.App.4th 862, the plaintiffs sued for fraudulent concealment, alleging the lender failed to disclose the loan it was making to the borrowers was part of a huge scheme to defraud its investors because it was offering to them pooled mortgages at inflated amounts, knowing this would cause the borrowers to lose their equity and substantially harm their credit ratings. The lender's actions destroyed home values. The court ruled that, although the lender "had a duty to refrain from committing fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its investors." (*Id*. at pp. 872-873.)

Plaintiffs argue these cases do not apply because of the allegations of the credit default swaps and "steering" of loans. But they have not shown why defendants had a duty to reveal this information.

Plaintiffs also argue there is a fiduciary duty here, giving the parties more than a normal borrower-lender relationship. They allege Stephen is not a sophisticated businessman and has always relied on brokers and lenders, here, Bayside and its alleged business partner Countrywide. Plaintiffs point to three letters they received from Countrywide after they submitted an application to refinance, where Countrywide referred to Bayside as its business partner. As a result, they allege, Countrywide had a duty to disclose everything about its underwriting and business practices that plaintiffs might think material. But an allegation of "special relationship" with defendants does not make it so. This is not a fact but a contention or a conclusion that we are not bound to accept as true.

We likewise reject plaintiffs' argument defendants owe a fiduciary duty because a "borrower almost totally relies on what the [l]ender is offering as a fair and reasonable offer" and "[m]any borrowers have very little or even NO knowledge of loan terms and conditions and blindly sign whatever documents are placed in front of them . . . ." This is not alleged in the SAC and even if it were, again, it is merely a contention and speculative at that.

8

Further, plaintiffs cite no cases imposing a duty on lenders to disclose "any and all facts about [a lender's] loan underwriting and business practices" that a borrower "might" believe are material. This suggested duty is exceptionally broad and ill-defined, which likely would lead to lenders' inability to discern its duties and cause additional turmoil in the financial sector. This does not serve any public policy. In sum, plaintiffs have not alleged and cannot allege a duty to disclose.

Another element of a fraudulent concealment cause of action is damage due to the concealment. (*Boschma v. Home Loan Center, Inc.*, *supra*, 198 Cal.App.4th at p. 248.) Plaintiffs plead they only had an income of $170,000 per year and no other assets but they took on debt of over $1.5 million. If they were damaged it was not due to concealment of any facts. It was because they entered into the loans without the income to pay for them. Plaintiffs plead they had "obvious financial limitations" at the time the three loans were made. They knew their own income and defendants did not conceal it from them. So whatever other information defendants may have concealed, the concealment did not cause plaintiffs' damages as a matter of law.

If the court sustains a demurrer without leave to amend, on appeal plaintiff has the burden to demonstrate "there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.] '". . . Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. . . ." [Citation.]' [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7-8.) Although plaintiffs make a general reference to amendment, the vast majority of their argument concerns why the allegations in the SAC were sufficient. The only additional facts they suggest they could plead are the specifics of who allegedly concealed facts. But these are not sufficient to cure the cause of action because the defects are not factual. Thus, plaintiffs have not met their burden to show they can amend.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.