Filed 9/30/21 Marker v. McConnell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| BILLY L. MARKER, | C092220 |
| Plaintiff and Appellant, | (Super. Ct. No. 163673) |
| v. | |
| MICHAEL MCCONNELL, | |
| Defendant and Respondent. | |

Plaintiff Billy L. Marker agreed to purchase a majority ownership interest in McConnell Chevrolet Buick, Inc., an authorized General Motors (GM) car dealership in Gridley, California (the "McConnell dealership"). Not long after Marker entered into the agreement and assumed day-to-day management of the McConnell dealership, the business failed. Marker then sued defendant Michael McConnell (McConnell), alleging claims for fraud and breach of contract. The trial court granted McConnell's motion for summary judgment, concluding that (1) Marker could not prove causation of damages

1

because Marker was contractually barred from acquiring the McConnell dealership under a prior settlement agreement with GM; and (2) Marker's claims were barred by the doctrine of unclean hands. Marker timely appealed. We will affirm the grant of summary judgment.

BACKGROUND FACTS AND PROCEDURE

*Marker's 2002 settlement agreement with GM*

The McConnell dealership was not the first GM dealership that Marker attempted to acquire. In or about 2000, Marker sued GM in connection with his failed acquisition of a dealership in Folsom, California. In April 2002, after the action was removed to federal court by GMC, the parties settled their dispute. Under the terms of the April 2002 settlement agreement (the "Settlement Agreement"), Marker was barred from owning, operating, or managing, or even applying to own or operate, any GM dealership without an express written modification of the Settlement Agreement signed by a GM officer and attorney.

In particular, paragraph 4 of the Settlement Agreement states: "As additional consideration for the settlement, without which Marker acknowledges GM would not be willing to enter into this agreement, Marker (a) represents and warrants that he has not applied, and agrees that he will not apply in the future (except as otherwise agreed between the parties in writing in the manner set forth in paragraph 5 below), for appointment as a Dealer-Operator, Dealer-Owner or Executive Manager of any GM dealership . . . ; (b) represents and warrants that he is not, and agrees that he will not in the future seek to become (except as otherwise agreed between the parties in writing in the manner set forth in paragraph 5 below), an investor in or owner of any interest in a GM dealership; and (c) agrees that, in the event he enters into discussions with any GM dealership or its owners, employees or representatives about acquiring an interest in or becoming an investor in any GM dealership, GM may disclose this provision and the other terms of this agreement to such persons and in doing so shall incur no liability

2

whatsoever to Marker. Marker further agrees to indemnify GM and hold it harmless from any damages, costs or attorney's fees due to any breach of any representation or warranty contained in this paragraph."

Paragraph 5 of the Settlement Agreement states that the terms of the agreement, including the provisions of paragraph 4, cannot be modified except by a written agreement signed by (1) Marker; (2) a GM corporate officer; and (3) a GM staff attorney with actual knowledge of the Settlement Agreement.

Under paragraph 6, Marker expressly acknowledged and agreed that GM retained "absolute discretion" to decide whether to allow Marker to apply for approval to become an owner, operator, or manager of a GM dealership and, if GM permitted any such application, it had "absolute and unfettered discretion" to accept or reject the application and Marker agreed not to sue GM for refusing to permit Marker to apply, failing to apply its customary standards to any application, or for rejecting any application.

*Marker's acquisition of the McConnell dealership*

Defendant McConnell was designated as the operator and sole owner of the McConnell dealership, which, as an authorized GM dealership, was subject to the terms of GM's standard Dealer Sales and Service Agreement (the "Dealer Agreement"). Under article 12.2 of the Dealer Agreement, GM approval is required for any change of ownership or management of an existing GM dealership. If a dealer proposes a change in ownership or a transfer of the business or its principal assets, the dealer is required to give GM prior written notice of the proposed change or transfer. If a change or transfer is made before GM's approval, the Dealer Agreement provides that GM may terminate the agreement and GM shall have no further obligation to consider the proposal.

In September 2012, Marker responded to an advertisement in an automotive trade publication listing the McConnell dealership for sale. Between September and November of that year, Marker and McConnell negotiated the terms of a sale of the business. During the course of these negotiations, McConnell provided Marker with various

records and information relating to the business, including operating reports, ownership breakdowns, financial statements, and tax returns.

On November 12, 2012, Marker entered into a stock purchase agreement with McConnell for the purchase of 90 percent (subsequently reduced to 85 percent) of the outstanding shares of the McConnell dealership. On January 1, 2013, Marker became the general manager and assumed day-to-day management of the McConnell dealership. Neither Marker nor McConnell sought or obtained GM's approval before entering into the stock purchase agreement or permitting Marker to assume day-to-day management of the McConnell dealership.

Because the stock purchase agreement involved changes in ownership and management, GM's approval was required under article 12.2 of the Dealer Agreement. On or about January 31, 2013, Marker filed the standard form used by GM for approval of a transfer of ownership and control of an authorized dealership.[1] Marker did not obtain GM's consent nor seek to modify the terms of the 2002 Settlement Agreement before submitting the application.

---

[1] GM's standard form included a series of questions that must be answered for the application to be considered. One question asked whether the applicant ever had been held liable in or settled any civil action or government investigation. Another asked whether the applicant ever had been rejected by GM for a dealership agreement or management position in a GM dealership. Marker checked the "No" box for both questions. Another question asked whether the applicant had ever undertaken legal action against GM. Marker checked "Yes" and attached a letter that he wrote to Angela Helt, an outside contracting agent for GM. In the letter, Marker stated that "[s]ometime around the late 1990's" he had been recommended to become a GM dealer in Folsom, California. After "several verbal promises" that he would become a dealer, GM's policies changed, leaving him "no choice but to file legal action." The letter made no mention of the 2002 Settlement Agreement or its terms. Nevertheless, when asked at his deposition whether he disclosed the Settlement Agreement to GM, Marker testified that, "[t]o my knowledge, I believe that I did" disclose it.

GM responded to the transfer application by letter dated April 10, 2013. The letter stated that there appeared to have been a change in ownership and management of the McConnell dealership without GM's approval, in violation of the Dealer Agreement. The letter warned that if the McConnell dealership did not correct or explain the discrepancies within 30 days, GM may terminate the Dealer Agreement and cease all business with the dealership.

Before final action was taken by GM, the McConnell dealership failed for financial reasons.

*The Carstens Chevrolet dealership*

Two years later, in early 2015, Marker attempted to purchase another GM dealership in the town of Alturas, California. In April 2015, again without seeking modification under paragraph 5 of the Settlement Agreement, Marker entered into a stock purchase agreement with Carstens Chevrolet, Inc., and its designated operator and sole owner, Robert Carstens (collectively, "Carstens"). Carstens then presented the agreement for GM's approval.

GM denied the proposal. In its April 29, 2015 written response, GM specifically referred to the 2002 Settlement Agreement and stated that it retained "absolute discretion" to decide whether to permit Marker to apply for approval to become an owner, operator, or manager of any GM dealership. Exercising that discretion, GM stated that it "will not accept, consider or approve any application by Mr. Marker to become Dealer Operator, Dealer Owner, Executive Manager, owner or other investor in any GM dealership, including Carstens Chevrolet."

Carstens filed suit against GM in federal court, alleging (among other things) that GM violated Vehicle Code section 11713.3, subdivision (d) by withholding its consent to the proposed change of ownership. (*Carstens Chevrolet, Inc. v. GM, LLC* (E.D.Cal. June 16, 2017, No. 2:16-cv-02618-MCE-CMK) 2017 U.S.Dist. LEXIS 95021, at *2-3.) Marker was a third party defendant in the case. (*Id*. at *1.) In the course of the ensuing

5

litigation, GM took the position that "it is not, never has been, and never will be required to consider, let alone approve, any attempt or proposal by Marker to obtain an ownership interest in any GM dealership . . . ."

*Marker's complaint against McConnell*

In January 2015, Marker filed the underlying action against McConnell (and others). Marker alleged that during negotiations to purchase the McConnell dealership, the defendants provided documents and information that they knew were incomplete, incorrect, falsified, and fraudulent. Marker alleged the defendants' misrepresentations and deceptions made the McConnell dealership appear to be a stable and profitable business being sold for a fair price, when in fact it was an ailing business, with an unclear ownership structure on the verge of financial collapse. Marker alleged that he relied upon the defendant's actions in his decision to purchase an interest in the McConnell dealership and was damaged when he lost his down payment, his investment in the dealership, and personal assets used to secure the dealership's debts. Marker also claimed that McConnell breached their stock purchase agreement by failing to transfer a financially healthy business, as the parties had agreed.

In September 2017, McConnell moved for summary judgment or summary adjudication on the grounds that (1) Marker could not prove that McConnell caused his damages, and (2) Marker's claims were barred by the doctrine of unclean hands. In support of the motion, McConnell argued that Marker was contractually bound to modify the Settlement Agreement before purchasing stock in the McConnell dealership and seeking GM's approval as an owner-operator. Because he failed to do so, McConnell argued that Marker was contractually barred from acquiring the McConnell dealership or

6

even having his application considered by GM.[2]  Thus, any loss suffered by Marker flowed from the terms of the Settlement Agreement, not McConnell's alleged misconduct.

In addition, McConnell argued that Marker's actions—purchasing the McConnell dealership without GM's prior written approval—constituted inequitable conduct that barred his claims under the doctrine of unclean hands.

In response, Marker admitted that GM had discretion to decide whether to modify the Settlement Agreement and approve Marker as an owner-operator.  However, Marker argued there was no specific process or timeline he had to follow to obtain such approval, and that nothing prohibited him from requesting GM's consent as part of the ordinary approval process for a change in ownership.  And because the dealership failed before any final decision by GM, Marker argued it was "speculative" to assume GM would have denied his application.  Thus, he argued, there were triable issues of material fact relating to whether McConnell caused his damages and whether his lawsuit is barred by the doctrine of unclean hands.

The trial court granted McConnell's motion for summary judgment and entered judgment against Marker.  Marker timely appealed.

DISCUSSION

I

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.  [Citation.]"  (*Aguilar v.*

---

[2]  McConnell also argued, based on GM's response to the Carstens dealership application, that GM would not have waived the restrictions of the Settlement Agreement.

7

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A trial court should grant a motion for summary judgment if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[3]

A defendant moving for summary judgment has the initial burden of showing, with respect to each cause of action in the complaint, the cause of action is without merit. (§ 437c, subd. (p)(2).) A defendant meets that burden by showing one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. (*Aguilar, supra*, 25 Cal.4th at p. 849; § 437c, subd. (p)(2).)

The burden of proof at trial is relevant to a defendant's burden of production when moving for summary judgment. (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201 (*Seo*).) Where, as here, the plaintiff would bear the burden of proof by a preponderance of evidence at trial, the defendant moving for summary judgment must present evidence that, if uncontradicted, would preclude a reasonable trier of fact from finding it was more likely than not that the material fact was true. (*Aguilar, supra*, 25 Cal.4th at p. 845.)

If the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 849; § 437c, subd. (p)(2).) In opposing the motion, the plaintiff may not simply rely upon allegations or denials in the pleadings. (*Seo, supra*, 97 Cal.App.4th at p. 1201.) The plaintiff must set forth specific facts showing that there is a triable issue of material fact. (*Ibid.*) A triable issue of material fact exists when the evidence reasonably would permit a trier of fact, under the applicable standard of proof, to find the contested fact in favor of the party opposing the motion. (*Aguilar*, at p. 850.)

---

**3** Undesignated statutory references are to the Code of Civil Procedure.

8

On appeal, we review a grant of summary judgment de novo, applying the same legal standard as the trial court. (*Seo, supra*, 97 Cal.App.4th at p. 1201.) In making this determination, we view the evidence and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, resolving any doubts about the propriety of granting the motion in favor of the party opposing it. (*Id.* at pp. 1201-1202; accord, *Aguilar, supra*, 25 Cal.4th at p. 843.)

## II

### *Marker Failed to Raise a Triable Issue of Fact on Causation*

The trial court granted summary judgment on the ground that Marker was unable to prove a causal relationship between McConnell's actions and the claimed damages relating to the purchase of the McConnell dealership. The court ruled that McConnell carried his initial burden of production by showing that Marker was contractually barred from even attempting to purchase the McConnell dealership, and therefore any damages suffered by Marker would have occurred even in the absence of McConnell's alleged misconduct. The court ruled that Marker, in opposition, failed to offer sufficient admissible evidence to create a triable issue of material fact.

Marker argues the trial court erred in granting summary judgment because the terms of the Settlement Agreement were ambiguous, leaving triable issues of fact as to the meaning of the Settlement Agreement and whether GM ultimately would have approved the proposed change in ownership. We find no error.

A. *Background*

Marker's complaint alleged causes of action against McConnell for (1) intentional misrepresentation; (2) fraudulent concealment; (3) conspiracy to commit fraud; (4) fraud in connection with the sale of securities; (5) rescission; and (6) breach of contract.[4]

---

[4] The complaint also alleged causes of action against the McConnell dealership's accountants and its former general manager. The accountants successfully moved for

9

Resulting damages is an essential element of each cause of action. (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1017 [fraud/deceit]; *Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870, 873 [concealment]; *Mosier v. Southern Cal. Physicians Ins. Exchange* (1998) 63 Cal.App.4th 1022, 1048 [conspiracy]; Civ. Code, § 1689, subd. (b)(1); *Reed v. King* (1983) 145 Cal.App.3d 261, 264 [rescission where consent obtained by fraud]; *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1352 [breach of contract].)

The plaintiff has the burden at trial to prove the causation element. (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1104.) To meet that burden, a plaintiff must show that the defendant's conduct was a substantial factor in causing the plaintiff's harm. (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 871.)

" 'The term "substantial factor" has no precise definition, but "it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." ' [Citation.]" (*Haley v. Casa Del Rey Homeowners Assn., supra*, 153 Cal.App.4th at pp. 871-872.) A defendant's conduct is not a substantial factor in causing harm if undisputed evidence shows the same harm would have occurred without that conduct. (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1008; *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1064; *Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1415; CACI No. 430 (2020).)

Although causation is ordinarily a question of fact, the issue "may be decided as a question of law if the undisputed facts permit only one reasonable conclusion." (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1528.)

---

summary judgment and the trial court granted a separate judgment in their favor. Marker's claims against the former general manager (now deceased) were voluntarily dismissed in January 2020.

B.    *Analysis*

McConnell, as the defendant moving for summary judgment, had the initial burden to show that Marker could not prove the causation element of his claims. (*Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.)  The trial court ruled that McConnell met that burden by showing that, in the absence of a written agreement modifying the Settlement Agreement, Marker was contractually barred from owning or operating a GM dealership, and therefore Marker would have suffered the same damages (loss of down payment and other investments in the McConnell dealership) regardless of McConnell's alleged misconduct.

Marker contends the trial court erred because the Settlement Agreement is reasonably susceptible to two different interpretations, thereby creating a triable issue of fact about its meaning.  We disagree.

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)  To determine the parties' intent, the court looks first to the words of the agreement.  (Civ. Code, § 1639.)  "If contractual language is clear and explicit, it governs.  [Citation.]" (*Bank of the West, supra*, 2 Cal.4th at p. 1264; Civ. Code, § 1638.)

Where the meaning of the words used in a contract are reasonably subject to dispute, resort to extrinsic evidence may be required to determine the parties' objective intent.  (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.)  However, the threshold determination of whether an ambiguity exists is a question of law, not fact.  (*Id.* at p. 433.)  Likewise, where no competent extrinsic evidence has been introduced, or where the extrinsic evidence is not in conflict, interpretation of the contract is a question of law. (*Ibid.*; accord, *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)  Only where the interpretation of the contract turns on the credibility of conflicting extrinsic evidence does the resolution of that conflict present a question of fact.  (*Brown, supra*, at p. 433; *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912-913; see also *City of El Cajon v. El Cajon*

11

*Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 70-71 [applying de novo review where evidence was undisputed and parties drew conflicting inferences].)

Here, the language of the Settlement Agreement is not ambiguous. Its plain language barred Marker from even applying for GM's approval without *first* obtaining written modification of the contract. Under paragraphs 4 and 5 of the Settlement Agreement, Marker explicitly agreed that he has not, and will not, "apply in the future" for appointment as an owner, operator, or executive manager, or "seek" to become an investor, in any GM dealership, "except as otherwise agreed between the parties" in a written modification agreement signed by a GM corporate officer and a staff attorney having actual knowledge of the Settlement Agreement. The language of the Settlement Agreement unambiguously bars Marker from even *applying* to own, operate, or manage a GM dealership without having first obtained GM's express written consent to modify the terms of the Settlement Agreement.

Further, even if the Settlement Agreement were reasonably susceptible to more than one interpretation, it still would not raise a triable issue of material fact because the meaning of the agreement did not turn on the credibility of conflicting extrinsic evidence. Although the parties advanced competing interpretations of the agreement, no competent extrinsic evidence was introduced. Marker merely offered his uncommunicated subjective understanding of the Settlement Agreement. Such evidence is irrelevant to contract interpretation. (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956; *California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 142-143; see also *Winet v. Price, supra*, 4 Cal.App.4th at p. 1167.)

Where, as here, there is no conflicting extrinsic evidence, the proper interpretation of the agreement presents a question of law. (*Iqbal v. Ziadeh, supra*, 10 Cal.App.5th at pp. 8, 13.) That the language of the agreement itself *might* reasonably support two different constructions does not convert the issue into one of fact to be resolved by a jury.

(*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266-1267; *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390; see also *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 76.) Accordingly, we conclude, as a matter of law, that Marker was required to obtain a written modification of the Settlement Agreement *before* applying for GM's approval.

Since it is undisputed that Marker never obtained the requisite modification, the trial court correctly concluded that Marker was contractually barred from acquiring (or even attempting to acquire) the authorized GM dealership. It follows that McConnell met his initial burden of showing that Marker cannot establish the element of causation; the down payment and other costs incurred by Marker in pursuit of the McConnell dealership would have been lost regardless of McConnell's alleged misconduct.

Because McConnell carried his initial burden to show that Marker cannot prove causation, the burden shifted to Marker to set forth specific facts showing that a triable issue of material fact exists by, for example, presenting evidence that GM would have waived its rights under the Settlement Agreement.[5] (§ 437c, subd. (p)(2).) Marker failed to meet that burden. Indeed, he admitted that he could only speculate about what GM ultimately would have done. Responsive evidence that gives rise to no more than mere speculation is not substantial, and is insufficient to establish a triable issue of material fact. (*Leyva v. Garcia, supra*, 20 Cal.App.5th at p. 1104; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

---

[5]     Even if it was McConnell's burden to show that GM would not have waived its rights, he met that burden by presenting evidence that, just two years later, GM denied the Carstens dealership application, stating that it would "not accept, consider or approve" any application by Marker to become an owner-operator in any GM dealership. In response, Marker presented no evidence demonstrating that it was more likely than not GM would have made a different decision with respect to the McConnell dealership.

13

The federal district court reached the same conclusion on similar facts in *Carstens Chevrolet, Inc. v. GM, LLC, supra*, 2017 U.S.Dist. LEXIS 95021. In that case, Carstens filed suit against GM for withholding its consent to a proposed change of ownership based on Marker's 2002 Settlement Agreement. (*Id*. at *1-3.) GM filed a motion to dismiss on the ground Carstens failed to show causation between the alleged injuries and GM's refusal to approve the proposed change in ownership. (*Id.* at *4.) GM argued that it was the Settlement Agreement with Marker, not any action by GM, that caused Carstens' pecuniary loss. (*Id.* at *7.) The district court agreed. (*Id*. at *7-8.) Although the federal court's decision is not binding on us, we find it persuasive. Any loss suffered by Marker occurred as a result of his Settlement Agreement with GM, not McConnell's alleged misconduct. Accordingly, Marker cannot prove the causation element of his claims.

Our conclusion does not, as Marker claims, render it impossible for a defrauded buyer to pursue claims against a dealer-seller. In a typical dealership acquisition, where the potential buyer is not subject to any preexisting contractual restrictions, an allegedly defrauded buyer simply must present evidence showing that the manufacturer (franchisor) would have approved the transaction. This is a low hurdle because Vehicle Code section 11713.3 prohibits such consent from being "unreasonably withheld."[6]

---

[6]     In his reply brief, Marker raises for the first time an argument, not raised in the trial court, that the Settlement Agreement is unenforceable under Vehicle Code section 11713.3, subdivisions (d)(1) and (g)(1)(A). Obvious reasons of fairness militate against our consideration of this new argument. (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500; *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1383; *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29.) But, in any event, the argument lacks merit. By its plain terms, the protections of subdivisions (d)(1) and (g)(1)(A) of Vehicle Code section 11713.3 extend only to dealer-transferors, not potential transferees. (*Larry Menke, Inc. v. DaimlerChrysler Motors Co., LLC* (2009) 171 Cal.App.4th 1088, 1093-1094.) Further,

14

(Veh. Code, § 11713.3, subd. (d)(1).)  The circumstances here are very different.  Marker was contractually precluded by the Settlement Agreement from even applying for approval without first obtaining a written modification of the Settlement Agreement signed by a GM corporate officer and attorney, and the agreement gave GM "absolute discretion" to withhold that consent.  Marker's policy argument is unfounded.

We conclude the trial court properly granted summary judgment on the ground Marker is unable to prove causation of damages as a matter of law.  Accordingly, we need not, and do not, decide whether summary judgment also was proper because the claims were barred by the doctrine of unclean hands.

DISPOSITION

The order granting summary judgment is affirmed.  As the prevailing party, McConnell shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


      KRAUSE      , J.


We concur:


      MURRAY      , Acting P. J.


      RENNER      , J.

---

subdivision (g) explicitly does not apply to  contracts entered into before December 31, 2011.  (Veh. Code, § 11713.3, subd. (g)(3)(D).)