[No. A125212. First Dist., Div. Five. Aug. 11, 2010.]

MERCEDES PERLAS et al., Plaintiffs and Appellants, v.
GMAC MORTGAGE, LLC, et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II., III., IV.B., V., VI., and VII.

## COUNSEL

Dennis Moore and Walter Hackett for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton; Wolfe & Wyman, Stuart B. Wolfe and Alice M. Dostálová for Defendants and Respondents.

OPINION

**SIMONS, Acting P. J.**—Plaintiffs Mercedes Perlas and Len Villacorta (appellants) appeal the dismissal of their action against defendants GMAC Mortgage, LLC (GMAC), and ETS Services, LLC (ETS)[1] (collectively, respondents). Appellants borrowed money from GMAC, a commercial mortgage lender. Following their failure to make the required loan payments, the underlying security was foreclosed upon. In the published portion of this decision, we reject appellants' claim that they could rely upon GMAC's knowingly false determination that they *qualified* for the loans as a determination by GMAC that they could *afford* the loans. In the unpublished portion, we reject appellants' other contentions.

## BACKGROUND[2]

Appellants own real property located on Drakes Circle in Discovery Bay (the Property). GMAC is a mortgage lender. Prior to November 27, 2007, appellants sought to refinance the Property by obtaining a loan from GMAC "and/or one or more of the Doe defendants" in the principal amount of $417,000 (the Loan). In connection with the Loan, GMAC provided a note setting forth a fixed interest rate of 6.375 percent and monthly payments of $2,601.54 (the Note). Respondents also provided appellants a truth-in-lending disclosure statement showing monthly payments of $2,601.54 for a 360-month term at a fixed rate of 6.393 percent. At the time appellants applied for the Loan, they provided information regarding their actual gross income "to one or more of the Doe defendants." One of the documents tendered at closing was a "purported" application for the Loan (Application), which appellants had neither prepared nor reviewed. The Application stated appellants' "total income" was $9,466 per month, which was substantially greater than the actual income information appellants provided to GMAC. This material change in appellants' income information was not disclosed to them prior to December 21, 2007, and appellants were never requested to confirm the accuracy of the information contained in the Application. At closing, appellants signed the preprinted Application and other documents without being given an opportunity to read or review them.

Along with the other documents regarding the Loan, GMAC prepared and tendered to appellants a deed of trust (Deed). The Deed identifies GMAC as " 'Lender.' " The Deed identifies unnamed defendant Mortgage Electronic

---

[1] Elsewhere in the record, ETS is referred to as Executive Trustee Services, Inc., and Executive Trustee Services, LLC.

[2] The background facts are derived primarily from the first amended and operative complaint (FAC).

Registration Systems, Inc. (MERS),[3] as a "separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this [Deed]." The Deed identifies ETS as "trustee" of the Deed. Unbeknownst to appellants, the Deed included substantial language, which constituted an addendum to the Note. Moreover, the beneficial interest in the Deed is separate from the Note, and appellants were not advised that such bifurcation is contrary to California law and without legal force or effect.

On or about December 21, 2007, appellants executed documents prepared by GMAC for a home equity line of credit (Credit Line), which was also intended to refinance the Property. The entire amount of the Credit Line, $114,000, was advanced as part of the refinance of the Property. However, the Credit Line application was neither prepared nor reviewed by appellants, and bears a preprinted date of November 27, 2007, on the applicant's signature line. On December 27, 2007, a deed of trust and assignment of rents was recorded to secure the Credit Line (Credit Line Deed).[4]

At no time did appellants' income permit them to make the payments called for in the Loan documents. On June 9, 2008, ETS recorded a notice of default and election to sell under the Deed (notice of default). ETS signed the notice of default "as agent for beneficiary." On September 19, 2008, ETS recorded a notice of trustee's sale.

On October 2, 2008, appellants filed their original complaint against respondents. On January 16, 2009, appellants filed the FAC against respondents and unnamed defendants alleging: slander of title (first cause of action), fraud (misrepresentation) (second cause of action), fraud (concealment) (third cause of action), conspiracy to commit fraud (fourth cause of action), to void contract (fifth cause of action), to void and cancel the Deed (sixth cause of action), breach of fiduciary duty (seventh cause of action), violation of Business and Professions Code section 17200 et seq. (eighth cause of action), intentional infliction of emotional distress (ninth cause of action), declaratory relief (10th cause of action), injunctive relief (11th cause of action), violation of Civil Code section 2923.5 (12th cause of action), and restitution (unjust enrichment) (13th cause of action).[5]

---

[3] MERS is not a party to this appeal.

[4] The Loan and the Credit Line are collectively referred to as the loans.

[5] The first cause of action was alleged against ETS, the fifth cause of action was alleged against GMAC and MERS, the seventh cause of action was alleged solely against the Doe defendants, the 11th cause of action was alleged against ETS and MERS, and the 13th cause of action was alleged against GMAC. The remaining causes of action were alleged against respondents.

On February 20, 2009, respondents demurred to the first through sixth and eighth through 13th causes of action of the FAC on the grounds they failed to state a cause of action and were uncertain and ambiguous. Respondents also moved to strike various portions of the FAC. Respondents requested that the court take judicial notice of the June 9, 2008 notice of default, the notice of trustee's sale recorded on September 19, 2008, and a copy of Civil Code section 2923.5. Appellants opposed the motion to strike and demurrer, asserting the FAC stated the alleged causes of action, and, if not, requesting the opportunity to amend.

None of the parties attended the hearing on the demurrer and motion to strike. In sustaining the demurrer to the FAC without leave to amend, the court ruled that the slander of title cause of action failed because the Deed specifically identifies ETS as the trustee under the Deed, and the remaining causes of action failed to state facts sufficient to state a cause of action. The court granted respondents' request for judicial notice and ruled the motion to strike was moot.

## DISCUSSION

### I.  *Standard of Review*

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demurer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 429.

IV. *Appellants Cannot Amend to State a Cause of Action for Fraudulent Misrepresentation or Fraudulent Concealment*

Appellants contend they can amend the FAC to allege facts sufficient to constitute causes of action for fraudulent misrepresentation and fraudulent concealment against GMAC.[6]

A. *Fraudulent Misrepresentation*

■ To establish a claim for fraudulent misrepresentation, the plaintiff must prove: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff *reasonably relied on the representation*; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. [Citations.]" (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498 [55 Cal.Rptr.3d 59].) "Each element in a cause of action for fraud . . . must be factually and specifically alleged. [Citation.]" (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519 [23 Cal.Rptr.3d 1].) In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 [49 Cal.Rptr.2d 377, 909 P.2d 981].)

The fraudulent misrepresentation cause of action of the FAC alleges that respondents and the unnamed defendants (Lender Defendants)[7] knew or should have known, at the time the documents were prepared and tendered by GMAC to appellants for the loans, that it was not possible for appellants to make the payments called for in the loans based upon the income information actually provided to GMAC. By preparing and tendering the documents to appellants, the Lender Defendants represented to appellants that appellants could, in fact, make the payments called for in the loans and failed to disclose to appellants that they could not possibly afford the payments called for in the loans.

---

[6] Appellants' failure to assert that the fraudulent misrepresentation and fraudulent concealment causes of action can be amended to sufficiently allege those causes of action against ETS constitutes an abandonment of those claims as to ETS.

[7] The FAC refers to respondents and the unnamed defendants collectively as the "Lender Defendants," and we will do so here.

Respondents' demurrer argued that appellants failed to allege a misrepresentation of fact as to their payment obligations because appellants admit they executed all of the loan documents required to obtain the loans and, thereby, agreed to all the terms stated in those documents. Respondents also argued that preparing and tendering documents to appellants for their execution cannot be deemed a representation outside the written terms of the agreement that appellants executed and thereby adopted. Respondents also argued that, even assuming appellants alleged representations of fact, appellants failed to allege who made the representations, when they were made and to whom they were made; how the representations are false; that respondents knew they were false; that respondents intended for appellants to rely on such representations and appellants did in fact rely on such misrepresentations.

Appellants argue they can amend the FAC to allege (1) GMAC represented to them that they qualified for the loans based upon their "true income," which appellants provided to GMAC when they applied for the loans; (2) the representation was false since appellants' qualification for the loans was based upon a "fabricated, inflated income"; (3) GMAC knew the representation was false; (4) GMAC demonstrated its intent that appellants rely on the false representation by requesting "true" financial data from appellants, inserting false financial data into appellants' Application, failing to inform appellants that the Application contained an inflated gross monthly income for appellants, and failing to provide appellants with an opportunity to read or review the Application and other loan documents; (5) appellants relied on the misrepresentation and obtained the loans believing that GMAC's approval of the Loan indicated that GMAC thought appellants "could afford" the loans; and (6) appellants were damaged by the misrepresentation because they would not have obtained the loans had they known their qualification was based upon a fabricated, inflated statement of their income.

Appellants also argue they can specifically allege the following: "GMAC represented to [appellants] they qualified for the loans based upon their true income." Based on information and belief, Nick Dutra was "a loan consultant for [GMAC]." In the fall of 2007, Dutra had a telephone interview with appellants during which they told Dutra their true gross income was $50,000 a year. A couple of days later, Dutra called appellants and told them they qualified for their loans. Appellants were never informed that their qualification for the loans was based upon a fabricated, inflated income of $9,466 a month. At the time of his misrepresentations, Dutra was located at a Pleasanton address. On information and belief, appellants can allege that Dutra had authority from GMAC to interview and gather financial information from prospective borrowers to submit for GMAC's loan approval, and to

fabricate and inflate a prospective borrower's income on his or her loan application without the borrower's knowledge and consent.

■ Neither the FAC nor appellants' proposed amendments allege that GMAC expressly represented to appellants that they had the ability to make the loan payments specified in the loan documents. Appellants appear to conflate loan qualification and loan affordability. In effect, appellants argue that they were entitled to rely upon GMAC's determination that they *qualified* for the loans in order to decide if they could *afford* the loans. Appellants cite no authority for this proposition, and it ignores the nature of the lender-borrower relationship. "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. [Citations.]" (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 [51 Cal.Rptr.3d 561].) A commercial lender pursues its own economic interests in lending money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 [283 Cal.Rptr. 53].) A lender "owes no duty of care to the [borrowers] in approving their loan." (*Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 [161 Cal.Rptr. 516].) A lender is under no duty "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." (*Renteria v. U.S.* (D.Ariz. 2006) 452 F.Supp.2d 910, 922–923 [borrowers rely on their own judgment and risk assessment in deciding whether to accept the loan]; accord, *Cross v. Downey Savings & Loan Assn.* (C.D.Cal., Feb. 23, 2009, CV 09-317 CAS (SSx)) 2009 WL 481482 [nonpub. opn.].) Thus, appellants fail to demonstrate they can sufficiently amend the FAC to state a cause of action for fraudulent misrepresentation.

B. *Fraudulent Concealment*<sup>*</sup>

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V.–VII.<sup>*</sup>

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

<sup>*</sup>See footnote, *ante,* page 429.

## DISPOSITION

The judgment of dismissal is affirmed. Costs to respondents.

Needham, J., and Bruiniers, J., concurred.