**Anthony MARINO, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**COUNTRYWIDE FINANCIAL CORPORATION, et al., Defendants.**

**Case No. SACV 14–46–JLS (ANx).**

United States District Court, C.D. California.

Signed July 7, 2014.

George Henry Spizzirri, George Spizzirri, San Clemente, CA, for Plaintiff.

Aileen Marie Hunter, Katherine Mae Harrison, Stuart W. Price, Bryan Cave LLP, Irvine, CA, Nafiz Cekirge, Bryan Cave LLP, Santa Monica, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS (Doc. 11)

JOSEPHINE L. STATON, District Judge.

### I. INTRODUCTION

Before the Court is a Motion to Dismiss filed by Defendants Countrywide Financial Corp., Countrywide Home Loans, Inc., Bank of America Corp., and Bank of America, N.A. (Mot., Doc. 11.) Plaintiff Anthony Marino filed an Opposition, and Defendants replied. (Opp'n, Doc. 13; Reply, Doc. 14.) Having considered the parties' briefing, and having taken the matter under submission, the Court GRANTS Defendants' Motion.

### II. BACKGROUND

In 2004, Anthony Marino purchased a single family residence for $585,000. (Notice of Removal Ex. A ("FAC.") at 8, Doc. 1.)[1] Marino financed part of the purchase price with a $468,000 loan from Washington Mutual. (*Id.*) In April 2006, Marino entered into two loans with Countrywide: (1) "a first mortgage loan" for $479,000 that replaced the Washington Mutual loan and was "secured by a first deed of trust" on the property; and (2) "a new second mortgage cash-out refinance loan" for $169,000, "secured by a second deed of trust" on the property. (*Id.* at 9.) Marino paid various fees to Countrywide to close the loans. (*Id.*)

According to Marino, "in lieu of conducting his own independent investigation," he "relied upon Countrywide's loan processing assessments; i.e., Countrywide's appraisal of [his] property and Countrywide's determination that the residual equity in [his] property was sufficient in amount to secure full repayment of his aggregate loan balance in the event of a future default and foreclosure." (*Id.*) Marino also alleges he "assumed the inherent risk that home prices could decline over time below his aggregate principal loan balance, subjecting him to a possible deficiency judgment in the event of default," although he alleges he did not assume such a risk "caused by Countrywide's undisclosed unsound business, lending and loan origination practices." (*Id.* at 11.) Marino claims "he would not have entered into the loan transactions he subsequently entered into with Countrywide" had he known of these practices and their foreseeable effects (described below). (*Id.*)

Marino alleges that these unsound lending practices began in 2003 when Countrywide implemented an aggressive growth strategy. (*Id.* at 19.) As a part of this strategy, Countrywide "sacrifice[d] sound lending practices" and began originating a large number of subprime and adjustable rate loans. (*Id.* at 22.) This practice resulted in "a mountain of bad loans" to borrowers, a high percentage of which were in California, who could not afford to make payments under the terms of their agreements. (*Id.*) Countrywide executives were aware but actively concealed the fact that when the housing boom ended, "large scale defaults and foreclosures would significantly change the supply-demand con-

---

**1.** When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint. *Hemi Grp., LLC v. City of* *New York,* 559 U.S. 1, 5, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010).

ditions of those regional marketplaces in which the foreclosures occurred, substantially contributing to the decline of home prices." (*Id.* at 27–28.) As a result, California borrowers with a second mortgage, including those borrowers who obtained loans from Countrywide, would face a "substantially increased risk" that, in the event they were unable to make mortgage payments and a judicial foreclosure was successfully completed on their property, they might be liable for a deficiency judgment on the second mortgage. (*Id.* at 68, 72, 83.)

Marino has "not made a monthly payment on his second mortgage debt since October of 2008," and "[o]ver the past five years [he] has received numerous letters and telephone calls from [Defendants] threatening action against [him] unless he cures his default." (*Id.* at 10.) In April 2013, Marino received a letter from Bank of America advising him that it intended to initiate a foreclosure action on the property. (*Id.*) The current market value of Marino's property is less than the aggregate balance owed by Marino on his two mortgages, and "[s]hould he default on his first mortgage debt, Plaintiff would be subject to a deficiency judgment by the second mortgage lienholder." (*Id.* at 11.) Marino remains current on his first mortgage. (*Id.*) On April 29, 2013, Marino contacted his attorney, who then "conducted an investigation into Countrywide's business, lending, and loan origination practices" and presented his findings to Marino in the form of a complaint. (*Id.* at 10–11.) Upon reading the complaint, Marino discovered "Countrywide's fraudulent conduct." (*Id.* at 11.) Specifically, Marino learned of Countrywide's "undisclosed unsound business, lending and loan origination practices." (*Id.*)

On December 5, 2013, Marino filed a First Amended Complaint in Orange County Superior Court, asserting claims against Defendants for (1) declaratory/injunctive relief; and (2) violation of California's Unfair Competition Law. (*Id.* at 82–86.) Marino's declaratory/injunctive relief claim seeks to hold Defendants liable for any deficiency judgment on his second mortgage, and either to enjoin Defendants from seeking such a deficiency judgment or, if Defendants assign their interest in the loans to a third party, to require Defendants to defend and indemnify Marino for any deficiency judgment sought by a third party. (*Id.* at 30–31, 84. *See also id.* at 87.) Marino's UCL claim seeks similar relief, and also requests restitution, apparently for any money he paid to Defendants when he agreed to take out his loans. (*Id.* at 30–31, 85–86. *See also id.* at 87.) Marino brings these claims on behalf of himself and a class of certain Countrywide borrowers. (*Id.* at 14.) Defendants removed the action on January 13, 2014. (Notice of Removal at 1.)[2]

On February 3, 2014, Defendants filed the present Motion. (Mot.)

### III. LEGAL STANDARD

 When a motion is made pursuant to Rule 12(b)(1), the plaintiff has the burden of proving that the court has subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001), *overruled on other grounds* by *Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). For the court to exercise subject matter jurisdiction, a plaintiff must show that he or she has standing under Article III. *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th Cir.2004) ("A suit brought by a plaintiff

---

**2.** The original Complaint was not served on Defendants; the First Amended Complaint was served on December 13, 2013. (Notice of Removal ¶ 2. *See also* Doc. 18 at 1–2.)

without Article III standing is not a 'case or controversy,' and an Article III federal court there-fore [sic] lacks subject matter jurisdiction over the suit." (citation omitted)). Article III sets forth the constitutional limitations on standing, requiring a plaintiff to establish (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury in fact must be concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 546 F.3d 981, 984–85 (9th Cir.2008). "The requirement that a case or controversy exist under the Declaratory Judgment Act is identical to Article III's constitutional case or controversy requirement." *See Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669–670 (9th Cir.2005) (quotation marks omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the nonmoving party. *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir.1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).

## IV. DISCUSSION

Defendants argue that (1) Marino's requests for declaratory and injunctive relief are not ripe; (2) Marino's claims are time-barred; (3) Marino fails to allege the essential elements of his claims; (4) Marino's allegations lack specificity; and (5) Bank of America Defendants are not liable for Countrywide Defendants' conduct. (Mem. at 2, Doc. 11–1; Reply at 1.) The Court finds Marino lacks Article III standing to seek declaratory or injunctive relief, and thus his declaratory relief claim and a portion of his UCL claim must be dis-

missed. The Court further finds that the remainder of Marino's claim for violation of the UCL is time-barred and, even if it were not, it fails to state a claim. As Marino's claims are either not ripe, time-barred, or fail to state a claim, the Court does not address whether Bank of America Defendants are liable for Countrywide's conduct..

## A. Article III Standing/Ripeness

■■■ Defendants argue that Marino lacks Article III standing to seek declaratory or injunctive relief, because the issues underlying the requested relief are not ripe for review. (Mem. at 6–7.) "Standing and ripeness under Article III are closely related. For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions. But whereas standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addressees when that litigation may occur." *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1123 (9th Cir.2009) (quotation marks omitted). "[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). "At the same time, a litigant need not await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly* impending, that is enough." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1180 (9th Cir.2010) (quotation

marks omitted). Article III standing must exist in federal court whether or not a state law claim would be ripe for a state court to review. *See Lee v. Am. Nat. Ins., Co.*, 260 F.3d 997, 1001–02 (9th Cir.2001).[3]

■■ Under California law, a lender must obtain a judicial foreclose before seeking a deficiency judgment. Cal.Civ. Proc.Code. §§ 580a, 580d, 726; *Cadlerock Joint Venture, L.P. v. Lobel*, 206 Cal. App.4th 1531, 1539–40, 143 Cal.Rptr.3d 96 (Ct.App.2012). Here, Marino asks the Court to hold Defendants liable for any deficiency judgment on his second mortgage, and enjoin them from seeking any such deficiency judgment. However, there is no deficiency judgment as to the second mortgage. Nor has any judicial foreclosure on either mortgage even been initiated, much less completed, despite the fact that since 2008 Marino has received "numerous" letters and phone calls from Defendants "threatening action."[4] Adding to the contingent nature of the claim, the foreclosure proceeding would have to be inadequate to cover the amount of the debt for there to be a deficiency. Marino's alleged injury therefore is far from "*certainly* pending." *Addington*, 606 F.3d at 1180. Instead, as Marino himself admits, his claims "rest upon contingent future events that may not occur as anticipated, or indeed at all." (Opp'n at 19 (quotation marks omitted)). *See Texas*, 523 U.S. at 300, 118 S.Ct. 1257. As such, his cause of action for "declaratory/injunctive" relief is not ripe, nor is his UCL claim, to the extent it is based on the same request for injunctive relief.

---

**3.** Generally, a claim must also be "ripe" based on prudential considerations. *Colwell*, 558 F.3d at 1123. Defendants do not address prudential ripeness. As the Court finds Marino's requests for declaratory and injunctive relief are not constitutionally ripe, it does not reach prudential ripeness.

**4.** A junior creditor may seek a deficiency judgment after the senior lender judicially forecloses on the real property, with certain exceptions where the creditor owns both liens. *Cadlerock*, 206 Cal.App.4th at 1543–47, 143 Cal.Rptr.3d 96. Marino, however, is current on his first mortgage.

Accordingly, Marino's cause of action for "declaratory/injunctive relief" is DISMISSED. The cause of action for violation of the UCL is DISMISSED to the extent it seeks the same injunctive relief.

### B. Statute of Limitations/Discovery Rule as to UCL Cause of Action

Defendants also argue that the claims are time barred. As Marino's requests for declaratory relief and injunctive relief are not ripe, the Court addresses only the cause of action for violation of the UCL, which has a four year statute of limitations, and only to the extent it seeks restitution for the loan fees Marino paid. Cal. Bus. & Prof.Code § 17208. *See also Addington,* 606 F.3d at 1182 n. 6 (discussing interplay between statute of limitations and ripeness inquiry).

 Marino alleges he paid the loan fees for which he seeks restitution in 2006, but he did not commence this action until 2013, seven years later. Marino seeks to apply the discovery rule to make his claim timely. (Opp'n at 21.) Under the discovery rule, "[t]he cause of action in [a] case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal.Civ.Proc.Code § 338(d). For the rule to apply, a plaintiff must "specifically plead facts to show (1) the time and manner of discovery [of facts constituting the fraud] and (2) the inability to have made earlier discovery despite reasonable diligence." *Canas v. Citimortgage, Inc.,* No. SA CV 13–00322–DOC, 2013 WL 3353877, at *3 (C.D.Cal. Jul. 2, 2013) (citations omitted). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 807, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005). The statute of limitations begins to run "only after one has knowledge of

facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App.4th 282, 298, 17 Cal.Rptr.3d 26 (Ct.App.2004). "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." *City of Vista v. Robert Thomas Securities, Inc.,* 84 Cal.App.4th 882, 886, 101 Cal. Rptr.2d 237 (Ct.App.2000).

 Marino alleges that in preparing his case, he "has drawn heavily" from various other lawsuits against Countrywide dating back to 2008. (FAC at 23–25.) He also cites Congressional testimony from 2007 and news reports from 2007 and 2008 regarding Countrywide's lending practices. (*Id.* at 40–41, 61, 76.) Marino alleges that "the foreseeable effects of Countrywide's unsound lending practices began to materialize" in 2007, around the time Countrywide "revealed an alarming growth in delinquencies and defaults." (*Id.* at 75.) In October 2008, Marino defaulted on his second mortgage, putting him at risk of foreclosure and, possibly, a deficiency judgment. (*Id.* at 10.) As stated above, Marino alleges he has received "numerous" letters and phone calls from Defendants since 2008 "threatening action" against him unless he cures his default. (*Id.* at 11.)

Despite this, Marino did not begin investigating these matters until April 2013, when he was sent a letter threatening foreclosure. (*Id.* at 10.) Marino's allegations fail to demonstrate why a reasonably prudent person in his situation would not have been on inquiry notice at least as of 2008, based both on the fact that (1) Marino was unable to afford his mortgage payments at that time and began receiving "numerous" letters and phone calls "threatening action;" and (2) much of the

information on which he bases his allegations was publicly available.

Thus, the balance of Marino's UCL cause of action, which seeks restitution, is time-barred. Further, the above-cited allegations demonstrate that it would be impossible for Marino to allege facts demonstrating that the discovery rule would allow him to avoid the statute of limitations. Accordingly, the balance of Marino's UCL cause of action is DISMISSED WITH PREJUDICE.

### C. Merits of UCL Cause of Action

Alternatively, the Court concludes that, to the extent Marino's UCL cause of action is ripe, and assuming it were not time-barred, Marino nonetheless fails to state a claim because he cannot plausibly allege a duty to disclose, materiality, or reliance.[5]

 Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof.Code § 17200. "Conduct is considered 'fraudulent' under the UCL if the conduct is 'likely to deceive'.... Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, as well as reliance." *Pinel v. Aurora Loan Servs., LLC.*, 814 F.Supp.2d 930, 941 (N.D.Cal.2011) (citations omitted). A duty to disclose exists if (1) the parties have a fiduciary relationship; (2) defendant has exclusive knowledge of material facts not known to plaintiff; (3) defendant actively conceals a material fact; or (4) defendant makes partial representations to plaintiff and suppresses material facts. *See Bank of Am. Corp. v. Super. Ct.*, 198

Cal.App.4th 862, 870–71, 130 Cal.Rptr.3d 504 (Ct.App.2011). In addition, "a plaintiff must have suffered an injury in fact and lost money or property as a result of the unfair competition to have standing to pursue either an individual or a representative claim under the California unfair competition law...." *Hall v. Time Inc.*, 158 Cal. App.4th 847, 849, 70 Cal.Rptr.3d 466 (Ct. App.2008) (quotation marks omitted). *See also* Cal. Bus. & Prof.Code § 17204. To the extent Marino's UCL claim is premised on fraudulent concealment, there must also be a nexus between the alleged fraudulent concealment and the economic harm suffered. *See Bank of Am.*, 198 Cal. App.4th at 873, 130 Cal.Rptr.3d 504.

 Marino fails to allege Defendants owed him a duty to disclose the information they allegedly withheld. A lender does not owe a duty to a borrower when it decides whether a borrower can afford a loan. *See Perlas v. GMAC Mortg., LLC*, 187 Cal.App.4th 429, 436, 113 Cal.Rptr.3d 790 (Ct.App.2010); *Bonyadi v. CitiMortgage Bank*, No. CV 12–5239–CAS (FFMx), 2013 WL 877603, at *5 (C.D.Cal. Mar. 8, 2013). This is because "[a] commercial lender is entitled to pursue its own economic interests in a loan transaction." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1093 n. 1, 283 Cal.Rptr. 53 (Ct.App.1991) "The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Perlas*, 187 Cal.App.4th at 436, 113 Cal.Rptr.3d 790. (citations and quotation marks omitted). Thus, there was no duty for Defendants to disclose to Marino the affordability of his loan. By extension,

---

5. Defendants also argue Marino fails to state a claim under the unfair and unlawful prong of the UCL. (Mem. at 19–20.) Marino's Opposition does not address Defendants' argument. The Court deems this an admission

that Marino fails to state a claim under the unfair and unlawful prongs. *Cf. Silva v. U.S. Bancorp*, No. 5:10–cv–01854–JHN–PJWx, 2011 WL 7096576, at *3 (C.D.Cal. Oct. 6, 2011).

there was no duty to inform Marino whether other borrowers could afford their loans. *Cf. Bank of Am.*, 198 Cal.App.4th at 870–73, 130 Cal.Rptr.3d 504 ("[W]hile Countrywide had a duty to refrain from committing fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its investors by selling them mortgage pools at inflated values."). Because Defendants had no duty to disclose to Marino whether he or other borrowers could afford their loans, there was no duty to disclose that so many borrowers might not be able to afford their loans that it would affect housing prices, such that if Marino defaulted (as a result of being unable to afford his loan), he might face an increased risk of a deficiency judgment. *Cf. id.* (holding Countrywide did not owe a "duty to disclose to the plaintiffs/borrowers its alleged fraudulent scheme to create inflated property appraisals throughout California, and then pool its mortgages and sell the pools to unsuspecting investors at inflated prices."). *See also Perlas*, 187 Cal.App.4th at 436, 113 Cal.Rptr.3d 790; *Nymark*, 231 Cal.App.3d at 1099, 283 Cal.Rptr. 53 ("[A] strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure [the success of every investment].") (alteration in original, quotation marks omitted).

▮ As to causation, Marino's alleged damages are that he paid fees to obtain loans from Defendants that he otherwise would not have entered into, had he known the facts that allegedly were fraudulently concealed. However, Marino does not allege he would not have entered into a loan transaction with another financial institution (or entered into a loan transaction that required no fees), which would be necessary to demonstrate causation in this case, as Marino alleges Countrywide's practices affected home prices throughout California, not just the home prices of Countrywide borrowers in California. (FAC at 68–70, 75.) *See Bank of Am.*, 198 Cal.App.4th at 873, 130 Cal.Rptr.3d 504 ("Irrespective of whether a homeowner obtained a loan from Countrywide, or obtained a loan through another lender, or whether a homeowner owned his or her home free and clear, all suffered a loss of home equity due to the generalized decline in home values. That being the case, there is no nexus between the alleged fraudulent concealment by Countrywide and the economic harm which these plaintiffs/borrowers have suffered."). As Marino does not do so, he does not allege causation.

Thus, to the extent Marino's UCL cause of action is ripe, and assuming the cause of action was not time-barred, it would nonetheless fail for the reasons stated above. The Court finds that Marino could not amend his pleadings to address the lack of a duty to disclose, and therefore Marino's UCL cause of action, to the extent it is ripe, is dismissed with prejudice.[6]

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. Marino's cause of action for "declaratory/injunctive relief," and his cause of action for violation of the UCL, to the extent it seeks injunctive relief, are DISMISSED. To the extent Marino's UCL claim seeks restitution, it is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

---

**6.** To the extent Marino's unripe requests for declaratory and injunctive relief are premised on the same duty to disclose, they would fail for the same reasons.