NOT FOR PUBLICATION

**FILED**

MAR 1 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CHARLES L. DUFF,<br>　　　　　Debtor. | BAP No. CC-20-1092-LGF<br>BAP No. CC-20-1095-LGF<br>(consolidated) |
| CHARLES L. DUFF; CATHRYN DUFF,<br>　　　　　Appellants,<br>v.<br>NEWREZ LLC, d/b/a Shellpoint Mortgage<br>Servicing; BANK OF NEW YORK<br>MELLON; COUNTRYWIDE FINANCIAL<br>CORPORATION; COUNTRYWIDE<br>HOME LOANS, INC.; COUNTRYWIDE<br>BANK N.A.; LANDSAFE, INC.;<br>LANDSAFE APPRAISAL, INC.; BANK<br>OF AMERICA CORPORATION; BANK<br>OF NEW YORK MELLON; BAYVIEW<br>LOAN SERVICING, LLC,<br>　　　　　Appellees. | Bk. No. 9:18-bk-11889-DS<br><br>Adv. No. 9:19-ap-01059-DS<br><br><br>**MEMORANDUM**[*] |

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: LAFFERTY, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Charles Duff appeals the bankruptcy court's orders dismissing his and his nondebtor spouse's complaint against appellees pursuant to Civil Rule 12(b)(6), applicable via Rule 7012,[1] without leave to amend.

The complaint's allegations that appellees' conduct caused harm to the Duffs were facially implausible and could not be cured by amendment. We therefore AFFIRM.

## FACTS

Mr. Duff filed a chapter 11 petition in November 2018. In October 2019, he and his wife, Cathryn Duff (collectively, "Plaintiffs"), filed an adversary proceeding against Countrywide Financial Corporation, Countrywide Home Loans, Countrywide Bank, N.A. (collectively "Countrywide"), Bank of America Corporation ("BANA"), LandSafe, Inc., LandSafe Appraisal, Inc. (collectively, "LandSafe"), The Bank of New York Mellon ("BONY")[2], Bayview Loan Servicing, LLC ("Bayview"), and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] According to BONY, the real party in interest is "The Bank of New York Mellon

NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint") (collectively, "Defendants").

The complaint contained eight causes of action for: (1) violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.); (2) violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c)); (3) violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(d)); (4) unjust enrichment; (5) fraud; (6) violations of the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692-1692p); (7) breach of the covenant of good faith and fair dealing; and (8) promissory estoppel.

These claims were based on the following relevant allegations: In 2006, Plaintiffs applied for a loan from Countrywide to refinance the mortgage on their Santa Barbara, California, residence (the "Property"). In connection with the loan application process, Landsafe conducted an appraisal of the Property and concluded that it was worth $2,850,000. Plaintiffs allege that unbeknownst to them, about three weeks later, Countrywide/Landsafe fabricated a second "secret, phony appraisal" (the "Second Appraisal"), which showed the value of the Property to be $3,494,500. Plaintiffs alleged that this Second Appraisal was part of a fraudulent scheme by Appellees to "systematically [corrupt] the appraisal process" so that it "could continue to rapidly originate and close loans to

f.k.a. The Bank of New York as Trustee for the Certificate-holders of CWALT, Inc., Alternative Loan Trust 2006-HY3, Mortgage Pass-Through Certificates Series, 2006-

3

fill up its ever expanding and highly profitable mortgage-backed securities pipeline to Wall Street . . . ." Plaintiffs did not discover the Second Appraisal until November 2018.

Countrywide ultimately offered, and Plaintiffs accepted, a loan of $1,850,000, to be repaid with interest-only payments for the first ten years, and principal and interest payments thereafter. Plaintiffs alleged that the loan was fraudulently induced and arranged by Countrywide and Landsafe based on phony appraisals and other fraudulent schemes and conduct and that Defendants[3] intended to induce Plaintiffs to accept the loan regardless of whether they qualified. Beginning in the eleventh year of the loan, Plaintiffs began having difficulty making their monthly payments, which had increased from $10,406.25 to $15,046.25 after the payments changed from interest only to principal plus interest.

Although Plaintiffs initially remained current on the increased loan payments, they contacted BANA, Countrywide's successor, to see if it would be willing to restructure or refinance the loan. BANA informed Plaintiffs that it would consider restructuring the loan only if Plaintiffs were behind in their monthly loan payments. Plaintiffs thereafter let their payments go into arrears and applied several times for loan modification, only to be denied each time. Eventually, Bayview initiated foreclosure

HY3."

[3] Plaintiffs alleged that all defendants acted in concert "to accomplish the offenses complained of."

4

proceedings in its capacity as servicer for BONY, BANA's successor-in-interest. This led to Mr. Duff filing his bankruptcy case in November 2018.

The complaint also alleged that applicable statutes of limitations did not bar the requested relief because the allegedly phony appraisal scheme was intentionally concealed by Defendants. Additionally, Plaintiffs alleged that the limitations periods were tolled by the pendency of a 2013 federal class action lawsuit, of which Plaintiffs were members, against Countrywide, LandSafe, and others arising from the allegedly fraudulent appraisal scheme. The complaint also contained a section on real estate appraisal standards and the importance of accurate appraisals in the home buying or refinancing process. Finally, the complaint detailed the purported scheme by defendants Countrywide, LandSafe, and BANA to falsify and inflate appraisals.

> Plaintiffs alleged that
>
> Defendants' fraudulent scheme and unlawful conduct resulted in Plaintiffs being burdened with a relatively high interest rate mortgage Loan which they could ill afford and which they were not really properly qualified for, and which they would eventually not be able to afford when the monthly mortgage payment ballooned from $10,406.25 a month, to $15,046.19 a month – **a 50% increase** in their monthly mortgage Loan payment.

Defendants BONY and Shellpoint moved to dismiss the complaint under Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They argued that: (1) Plaintiffs' claims were barred by

applicable statutes of limitations; (2) the complaint contained no allegations against BONY or Shellpoint, neither of whom participated in the origination of the subject loan; and (3) the claims failed as a matter of law. Defendants BONY and Bayview separately moved to dismiss the complaint, arguing that: (1) most of the claims were untimely; (2) none of the claims were adequately pleaded; and (3) the allegations supporting the fraud-based claims lacked particularity. Shortly thereafter, defendants Countrywide, BANA, and Landsafe filed a joinder in the two motions to dismiss. Plaintiffs opposed the motions, and Defendants replied.

After hearing argument, the bankruptcy court announced its ruling on the record on March 23, 2020. The bankruptcy court found that (1) all eight causes of action were barred by the applicable statutes of limitations; and (2) the allegations of the complaint did not plausibly allege a causal link between the alleged phony appraisal and any injury to Plaintiffs. As a result, Plaintiffs lacked constitutional standing. The bankruptcy court found that any amendment would be futile. Accordingly, it granted both motions to dismiss. Plaintiffs timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in dismissing Plaintiffs' complaint without leave to amend?

## STANDARD OF REVIEW

We review de novo a dismissal under Civil Rule 12(b)(6). *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011) (citing *AlohaCare v. Hawaii, Dep't of Human Servs.*, 572 F.3d 740, 744 n.2 (9th Cir. 2009)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

### A. Standard for Dismissal under Civil Rule 12(b)(6)

Because we are reviewing this matter de novo, we must apply the same legal standard as the bankruptcy court. Dismissal under Civil Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

We must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. *In re Belice*, 461 B.R. at 573. "[T]he key is whether the allegations are well-pled; a court is not bound by conclusory statements, statements of law, or unwarranted inferences cast as factual allegations." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

## B. The bankruptcy court did not err in dismissing Plaintiffs' complaint.

The bankruptcy court concluded that Plaintiffs' complaint failed to state a claim upon which relief could be granted because it failed to plausibly allege facts supporting the reasonable inference that any wrongful conduct of Defendants caused injury to them. Accordingly, it concluded that Plaintiffs lacked constitutional standing. At the same time, the court focused much of its analysis on whether the claims were barred by the applicable statutes of limitations, and the parties do the same in their briefing. But the statute of limitations defense is relevant only if the complaint adequately pleaded a plausible claim. Further, the bankruptcy court's conclusion that Plaintiffs lacked constitutional standing (thus

implicitly finding that the court lacked subject matter jurisdiction), while perhaps correct, is not the appropriate analysis in the context of a motion to dismiss under Civil Rule 12(b)(6). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting that Civil Rule 12(b)(1), not (b)(6), is the appropriate legal basis for challenging Article III standing). But we may affirm on any basis supported by the record, *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012), and, as discussed below, we agree with the bankruptcy court that the complaint failed to state a claim upon which relief could be granted.

The gravamen of each cause of action pleaded in Plaintiffs' complaint is that the Second Appraisal resulted in Plaintiffs being fraudulently induced to accept a loan with a high interest rate that they were not qualified for and that they could not afford once the monthly payments increased. Like the bankruptcy court, we find it unnecessary to parse through the elements of each cause of action pleaded in Plaintiffs' complaint because this premise is implausible on its face. As a result, all of Plaintiffs' claims fail as a matter of law.

As noted, in evaluating a claim under Civil Rule 12(b)(6), we are obliged to accept the allegations of the complaint as true. But we are not obliged to accept conclusory statements or unwarranted inferences cast as factual allegations. *In re Belice*, 461 B.R. at 573. Even accepting as true the allegations that: (1) Countrywide and Landsafe engaged in a fraudulent

9

appraisal scheme; (2) they fabricated the Second Appraisal to obtain approval from Countrywide's underwriters and for purposes of securitizing the loan; and (3) Plaintiffs ultimately could not afford the payments on the loan, which led to the commencement of foreclosure proceedings, it does not automatically follow that Defendants' alleged bad acts were the cause of Plaintiffs' injuries, despite Plaintiffs' conclusory allegation that the Second Appraisal resulted in their obtaining a loan they could not afford. This is so even considering the allegation that Defendants intentionally and fraudulently induced Plaintiffs to accept the loan. Based on the authorities cited below, this allegation is implausible.

As a matter of California law, a lender acting in its conventional role as a lender of money owes no duty of care to a borrower in preparing an appraisal of the borrower's collateral. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1100 (1991).[4] This is because the purpose of the appraisal is to protect the lender's interest by satisfying it that the collateral is adequate security for the loan. *Id.* at 1096. In fact, the borrower is generally in as good a position as the lender to know the value and condition of the property, particularly when the borrower has lived in the property. *Id.* at 1099.

Moreover,

---

[4] In *Nymark*, the court of appeal affirmed the trial court's grant of summary judgment dismissing a borrower's negligence claim against a lender for statements in an appraisal performed by the lender indicating the subject property was "A quality," when it later turned out that the property needed over $50,000 in repairs.

> [I]t is not reasonably foreseeable that a borrower will be influenced to his or her detriment by an appraisal prepared by the lender for its own benefit because the borrower is in a position in which he or she knows or should know the value and condition of the property independent of the appraisal made for the lender's protection. Stated another way, the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain . . . .

*Id.*

In addition, a lender has no duty to determine whether a borrower can afford to repay a loan. *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436 (2010). In *Perlas*, the court of appeal affirmed the trial court's granting of a demurrer on a borrower's fraudulent misrepresentation claim against a lender based on lender's conduct in qualifying borrowers for a loan they could not afford. Like the appellants in *Perlas*, Plaintiffs here "appear to conflate loan qualification and loan affordability. In effect, [Plaintiffs] argue that they were entitled to rely upon [the lender's] determination that they qualified for the loans in order to decide if they could afford the loans." *Id.* The *Perlas* court rejected this argument: "Appellants cite no authority for this proposition, and it ignores the nature of the lender-borrower relationship. Absent special circumstances, a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." *Id.* (citations, alterations, and quotation marks

11

omitted). *See also Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 963-64 (C.D. Cal. 2014).

Plaintiffs argue that they alleged a fraudulent scheme, injury, and causation and that the bankruptcy court erred because it did not accept the allegations of the complaint as true. That is not the case. The bankruptcy court accepted the allegations as true, but it correctly refused to draw the unwarranted inference that the alleged fraud caused the injury.

Next, Plaintiffs argue that the bankruptcy court inappropriately engaged in speculation that the initial appraisal indicated more than enough equity to justify making the loan. They contend that the court's observation did not take into account that the first appraisal was also inflated and that other factors are also considered before a loan is approved, including credit score, payment history, income, and outstanding debt. These arguments do not help Plaintiffs.

To begin, there are no allegations in the complaint that the first appraisal was fraudulent or that Plaintiffs relied on it in accepting the loan. In their opening brief, Plaintiffs contend that they alleged that the first appraisal was fraudulent, but their citations to the complaint do not support that contention.[5]

---

[5] Plaintiffs refer to paragraphs 111 and 125 of the complaint. Paragraph 111 pertains to the unfair competition cause of action and alleges that the loan was fraudulently induced based on phony "appraisals." Paragraph 125 pertains to the RICO claim (18 U.S.C. § 1962(c)) and alleges that Defendants used the U.S. mail to transmit the "so-called appraisals" to Plaintiffs and other victims.

Further, Plaintiffs did not make this argument to the bankruptcy court. Rather, in their opposition to the motions to dismiss, Plaintiffs argued:

> completely hidden from Plaintiffs, the Countrywide Defendants made up a phony second "appraisal" of the Residence which put a value of $3,494,500 on the property . . . . The fraudulent appraisal on Plaintiffs' Residence allowed the Countrywide Defendants to, among other things, make a jumbo loan to Plaintiffs for which Plaintiffs would not have otherwise qualified or taken.

And their observation that lending decisions are based on additional factors besides the appraised value actually cuts against their argument that either appraisal was the basis for the terms of the loan they were offered; rather, they acknowledge that the appraisal is only one factor considered by a lender in deciding how much to lend and under what terms.

Finally, if the first appraisal was the cause of damage to Plaintiffs, they knew about it at the time of the loan origination and were thus on inquiry notice; accordingly, there is no question that the statutes of limitations on all of their causes of action would have expired before the complaint was filed. *See Pincay v. Andrews*, 238 F.3d 1106, 1109–10 (9th Cir. 2001) ("'The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably

13

diligent, would have led to discovery of the fraud.'" (quoting *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988))).

Plaintiffs also attempt in their brief to add a new allegation, i.e., that BANA acted wrongfully in denying a loan modification. But the complaint alleges no such thing. Rather, the complaint alleges that BANA told Plaintiffs it would "consider" a loan modification if their payments were delinquent, not that it would guarantee such a modification.

## C. The bankruptcy court did not err in dismissing the complaint without leave to amend.

On appeal, Plaintiffs do not explicitly argue that the bankruptcy court should have given them an opportunity to amend their complaint or that it erred in finding amendment would be futile. In fact, they never asked the bankruptcy court for leave to amend, nor did they propose any new allegations that would cure the plausibility issue identified by the bankruptcy court. Plaintiffs have thus waived the issue. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). In any event, we see no error in the bankruptcy court's conclusion that the deficiencies of the complaint could not be cured by any amendment.

## CONCLUSION

Plaintiffs failed to establish that they had plausible claims for relief based on the facts alleged. Accordingly, the bankruptcy court did not err in dismissing their complaint without leave to amend. We therefore AFFIRM.